This was an action for actionable negligence brought by plaintiff against defendant. The defendant set up the defense that D. U. Martin or some of his subcontractors or employees were independent contractors, denied negligence and plead that plaintiff assumed the risk and was guilty of contributory negligence.
The issues submitted to the jury and their answers thereto, were as follows:
"1. Was the plaintiff in the employ of Louis Waters or D. U. Martin, as alleged in the answer? Answer: No.
"2. If so, was said D. U. Martin an independent contractor as alleged? Answer: No. *Page 252 
"3. Was plaintiff injured by the negligence of defendant as alleged in the complaint? Answer: Yes.
"4. Did plaintiff by his own negligence contribute to his injury? Answer: No.
"5. What damage, if any, is plaintiff entitled to recover of defendant? Answer: $2,000."
The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The necessary facts and assignments of error will be considered in the opinion.
The first question presented by defendant: Was the burden of proof upon defendant to satisfy the jury by the greater weight of the evidence that plaintiff was not employed by it, but by Louis Waters and D. U. Martin, and to satisfy the jury by the greater weight of the evidence that Martin was an independent contractor, as alleged in the answer?
In Sutton v. Lyons, 156 N.C. 5, it is held: "Where the plaintiff has suffered an injury from the negligent management of a vehicle, such as a boat, car or carriage, it is sufficient prima facie evidence that the negligence was imputable to the defendant to show that he was the owner of the thing, without proving affirmatively that the person in charge was the defendant's servant. It lies with the defendant to show that the person in charge was not his servant, leaving him to show, if he can, that the property was not under his control at the time, and that the accident was occasioned by the fault of a stranger, an independent contractor or other person, for whose negligence the owner would not be answerable. 1 Sherm. and Redf. Neg., 71. Any other rule, especially where persons are dealing with corporations, which can act only through agents and servants, would render it almost impossible for a plaintiff to recover for injuries sustained by defective machinery or negligent use of machinery.' Midgettev. Mfg. Co., 150 N.C. 341." Embler v. Lumber Co., 167 N.C. 457.
The next question presented by defendant is the refusal of the court below to enter judgment as in case of nonsuit at the conclusion of all the evidence. C. S., 567. On a motion to nonsuit, the evidence is to be taken in the light most favorable to plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom. *Page 253 
As to the first issue: Was there sufficient evidence to be submitted to the jury that the plaintiff was not in the employ of Louis Waters or D. U. Martin? We so hold.
The defendant, Interstate Cooperage Company, was engaged in the lumber business. Certain timber was being cut on lands known as J. W. Dismal tract, under contract between J. W. Land Company and defendant. A certain logging railroad, about three or four miles, had been built into the woods from Pinetown. The railroad, engines, cars, railroad skidder or loading machines and logging equipment belonged to defendant. The logs were put on defendant's cars in the woods and the cars transported by defendant's engine, or tractor, to Pinetown, where they were transferred to the Norfolk Southern Railway Company.
The defendant contends that it had an independent contract with D. U. Martin, and that plaintiff was in the employ of Martin or Waters, subcontractor of Martin; that it had nothing to do with the operation of the logging road or getting the logs out of the woods or loading them; that it was Martin's duty to get the logs out of the woods, load them on the cars and have them hauled to Pinetown over the logging railroad and delivered to it f. o. b. cars.
On the other hand, plaintiff contended the hands were employed by Louis Waters, who had contracted this machine from Martin. Louis Waters sent for him to go to work there, but on Saturday, at 12 o'clock, Louis Waters gave up the contract he had with Martin, the defendant's alleged independent contractor. He, plaintiff, went to Pinetown the following Monday morning. "On Monday morning there was some talk about his (Louis Waters) giving up the contract with Martin and he was told to go ahead until Martin could get somebody else to take his place, and he went ahead. I went to work that day. He (Louis Waters) was foreman of the machine. Mr. Bell was there that morning and gave orders. He said here is a crew of men; pick them out and go into the woods." He, with Macon, Walter and Alvin Waters, Leman Modlin and Joe Hunter were picked out and went into the woods; "we got on the train and went into the woods to work." It was in evidence that J. W. (Walter) Bell, who gave the orders, had been working for defendant twenty-three years. He was at the time superintendent of defendant's mill at Belhaven, where the logs out of the woods were taken. "D. U. Martin didn't stay in the log woods at all. He stayed at the transfer at Pinetown. Mr. Bell was there some part of the time, and sometime the other boss. Mr. McDaniel was the head boss in the woods. He gave the orders and streaked out and located the timber. *Page 254 
. . . I saw Mr. Bell locating the railroad, streaking it out and taking the engine from one loading machine to another."
S. F. Wallace testified: That he worked for Mr. Bell about the time of plaintiff's injury. "I saw Mr. Bell around the woods right smart, straightening the lines and seeing that the timber was cut out, seeing that they stayed on certain sections of the land and didn't get off of it. . . . Louis Waters had contracted the machine, but told me on Saturday that he had given it up. The hands went to work on this machine Monday morning. I don't remember where I was working when Lilley was hurt. When I was there The Interstate Cooperage Company had the logs taken from the machine in the woods and loaded them on cars. Martin didn't have anything to do with that when I worked at the transfer loading logs. Mr. Walter (J. W.) Bell always paid me for it with a check. Mr. Martin didn't pay me."
Leman Modlin testified: "I was at Pinetown when all hands started to the woods with Louis Waters. I saw Mr. Bell there. I heard him say; he came to us and told us, and in consequence of what he said we went into the woods to work. I have seen Mr. Bell around Pinetown and Belhaven and have seen him in the log woods."
The logs were measured by Mr. McDaniel, an employee of defendant, after they were loaded on cars at Pinetown. McDaniels' work was scaling logs at Pinetown where they were transferred to the Norfolk Southern Railway, thence to Belhaven, where defendant's mill was located.
The evidence was sufficient to be submitted to the jury. Their answer to the issue was that plaintiff was not in the employ of Louis Waters or D. U. Martin, as alleged in the answer. In other words, from the evidence they found that plaintiff was in the employ of the defendant on the occasion of the injury. The answer to this issue, we think, makes the second issue immaterial, the good faith of the contract with D. U. Martin, the alleged independent contractor, or that the work was inherently or intrinsically dangerous. These matters are not necessary on the record to be determined or the charge of the court below in reference thereto. From the evidence the issues were separable — the seeming inadvertence in the charge was not prejudicial.
The principle laid down in Ginsberg v. Leach, 111 N.C. p. 15, is as follows: "The Supreme Court will not consider exceptions arising upon the trial of other issues, when one issue, decisive of the appellant's right to recover, had been found against him by the jury." Hamilton v. Lumber Co.,160 N.C. 52; Beck v. Wilkins-Ricks Co., 186 N.C. 215; Sams v. Cochran,188 N.C. 734; Michaux v. Rubber Co., 190 N.C. 617; McNair v. FinanceCo., 191 N.C. 710. *Page 255 
On the finding of the jury on the first issue and the facts being sufficient to sustain it, the plaintiff was employed by the defendant operating a logging road.
In Stewart v. Lumber Co., 193 N.C. at p. 140, it is said: "The clear language of the Act of 1919, ch. 275, supra, says that the provisions of this article (Fellow-servant rule abrogated, C. S., 3465) — contributory negligence no bar, but mitigates damages. C. S., 3467, applies to logging roads. . . . (p. 141) In Mott v. R. R., 131 N.C. at p. 237, it is said: `The language of the statute is both comprehensive and explicit. It embraces injuries sustained (in the words of the statute) by "any servant or employee of the railroad company . . . In the course of hisservice or employment with said company." The plaintiff was an employee and was injured in the course of his service or employment,' citing numerous authorities." The Fellow-servant doctrine has no application in this action.
The skidder, or loader, consisted of a stationary engine and boiler setting on a flat surface, the engine operated a drum around which a cable revolved and was attached to a swinging boom. In operating the grab, at the end of the cable it was fastened to the log and the log was pulled up by starting the engine and placed on the car. In the present case the plaintiff, in the course of this employment, fixed the grab as nearly as possible to the center of gravity of the log being lifted — a cypress log 16 feet long and 14 inches through.
Plaintiff testified: "Macon Waters was operating the engine on the loading machine. I was using the grabs, grabbing the logs. I carried the grab and put it on the log and told Waters to tighten it light. He brought the log up and never gave me any chance to get away. He pulled the log up and the log swung and it hit me on the shoulder and knocked me down. He dropped the log on me, on my leg. It came across me and threw me on my back and I under the log. It struck my shoulder first. He was where he could see me. The grabs did not turn loose. He dropped the log himself by turning the engine loose and the log came down. . . The log was a cypress log about fourteen inches through. . . I couldn't get out of the way. I started to run, but the log knocked me down before I could get out of the way, when I told him to tighten it light. If it had knocked me down, if it had not come down on me I would not have been hurt." Plaintiff further testified: "The falling log ruined me. I can't get about. I can't travel. I can't work. I can't plow. My leg hurts me so bad."
Dr. J.L. Nicholson, general surgeon at the Fowle Hospital, testified: "It is a permanent injury." *Page 256 
On the issue of negligence the court below clearly defined negligence and proximate cause and charged: "Under this issue the question for you to consider is whether or not under the circumstances surrounding him, Macon Waters exercised the care and prudence a man of ordinary care would use in operating the skidder at that time. If you are satisfied by the greater weight of the evidence that he failed to exercise such care — the burden being on the plaintiff — and that the failure was the proximate cause of the plaintiff's injury, you will answer the issue Yes; if not so satisfied, you will answer it No."
On the issue of contributory negligence the court below charged: "Upon this issue the burden is upon the defendant, who alleges contributory negligence of the plaintiff. Before you can answer the issue Yes, you must be satisfied by the greater weight of the evidence that the plaintiff was negligent and that his negligence was the proximate cause of the injury. . . . The plaintiff owed a duty similar to that which the defendant owed the plaintiff in operation of the skidder, to exercise the care that a man of ordinary prudence would exercise to protect himself from danger; if he failed to exercise such care and prudence, and such failure as a proximate result caused the injury, then he would be guilty of contributory negligence and your answer to the fourth issue would be, Yes."
If defendant had wanted a more explicit charge as to proximate cause on the contributory negligence issue, such instruction should have been requested. Fleming v. Utilities Co., 193 N.C. p. 262. There was no exception or prayer for instructions on the issue as to damages.
On the whole record we can find no prejudicial or reversible error.
No error.