M. V. GURGANOUS v. CAMP MANUFACTURING COMPANY.

(Filed 19 April, 1933.)

1. **Master and Servant G a—The Legislature has liberalized rules of liability in favor of employees of railroads and logging roads.**

   In recognition of the imminently dangerous and hazardous character of railroad operations the General Assembly has provided by statute that in actions by employees of railroads to recover for injuries the fellow-servant rule shall not apply thereto, C. S., 3465, that contributory negligence shall not be a complete bar, C. S., 3467, and that the statutes should apply to logging roads and tramroads, C. S., 3470, but the acts apply only to employees who are engaged in duties connected with or incidental to the operation of such roads.·

2. **Same—Under facts of this case defendant was not a logging road and employee guilty of contributory negligence could not recover.**

   Where the uncontradicted evidence discloses that defendant had operated a logging road, but that the tracks had been taken up at the time of plaintiff's injury, and all locomotives removed, and that plaintiff was injured while operating a motor engine on defendant's spur track around

its manufacturing plant, and that plaintiff was engaged in dismantling defendant's lumber plant and machinery preparatory to transporting it to another point: *Held*, the defendant was not engaged in the business of a logging road at the time of the injury, and plaintiff may not recover for the injury so sustained when the jury has found that he was guilty of contributory negligence; spur tracks maintained in a mill yard for shipping, loading and unloading, being essentially plant facilities and not railroad.

CIVIL ACTION, before *Cranmer, J.*, at August Term, 1932, of DUPLIN. The evidence tended to show that the defendant had at one time been engaged in operating a lumber manufacturing plant near Wallace, and that in connection with the operation of said plant it owned and operated a standard gauge railroad, with iron rails, extending from the Atlantic Coast Line Railroad Company's main track into the mill plant, and from the mill plant westwardly 20 to 30 miles into the woods, and that logs were transported by means of said railroad to the mill plant at Wallace. In the mill yard of defendant at Wallace there were several spur tracks or short tracks branching off from the main line of the Atlantic Coast Line, and one of these spur or short tracks ran to the planing mill. At the end of the planing mill track a discarded gasoline engine and shanty car had been left standing on said track. Prior to 15 January, 1931, the defendant had ceased to operate its plant or its railroad line. The plaintiff said: "They had ceased to operate them and were not sawing any more lumber. They had shipped off all the manufactured lumber. All that they were doing was to tear down the mill and haul the machinery out. The locomotives were gone, and there was nothing to be operated except the gas motor cars." On the date of his injury the plaintiff was operating a gas motor car on a track in the mill yard. The narrative of the injury is substantially as follows: "We were tearing down a building and loading it on cars, machinery and everything. We used all these seven spur tracks in tearing down the mill. . . . Kimball gave me orders to drive it. On the trip on which I was injured we started above the scale track where we were unloading to go down to the planing mill. . . . The motor car was pulling two transfers. I was backing the motor car, and the transfer car was in front of them. . . . I was going backwards toward the planing mill and my back was in that direction. . . . He signed me back to get the dust collector out of the way across the track. They wanted it on the opposite side of the mill. There was nothing in the way when I first stopped. . . . Kimball stepped off the motor car and signed me back, and he stopped signing me, and I reached up and stopped the motor car. . . . When he did this I stepped out with my left leg first, and when I turned loose the lever I stepped like this and my

foot over behind me, and the motor car rolled backwards and caught me between the motor car and the coupling on the gas engine. The whole butt of the motor car pressed against me. I commenced hollering, and they pulled it off. . . . I had charge of the motor car, knew how to start and stop it. . . . I never saw the gasoline engine until the Camps brought it out of the woods and put it on the switch. . . . I knew it was there. I helped carry it there and store it up. . . . The only way is to get on the end and off the end. If the car had not rolled it would not have caught me. . . . If I had known it was rolling, I would not have kept my leg out of there. . . . When I turned off the motor I attempted to put on the brakes. I had the brakes on when I got off, but they would not hold."

There was evidence that plaintiff's leg was broken and that he sustained serious injury. The usual issues of negligence, contributory negligence and damage were submitted to the jury, and in addition a fourth issue as follows: "Was the defendant at the time of the injury set out in the complaint, operating a railroad or log road within the meaning of the law governing actions brought by railroad employees for personal injury or actions of this nature?" The jury answered the issues of negligence and contributory negligence "Yes," and the trial judge directed the jury to answer the fourth issue "Yes," as a matter of law. Damages were awarded in the sum of $3,416.30.

From judgment upon the verdict the defendant appealed.

*George R. Ward for plaintiff.*
*Beasley & Stevens for defendant.*

BROGDEN, J. Was the plaintiff engaged in the operation of a logging road at the time of his injury?

Recognizing that the risk and hazard of railroad operations were of such imminently dangerous character, the liberal and enlightened thought of the State undertook to protect and safeguard workmen who, in the pursuit of their daily bread, were constantly subjected to such hazards. The first step toward such liberalization was taken by the courts, and thereafter the law-making body began to extend it further by statute. Consequently, subsequent to 1897 an employee of any railroad company, operating in this State, is no longer barred of recovery for negligence by reason of the application of fellow-servant doctrine. C. S., 3465. Thereafter the full rigor of the defense of contributory negligence was modified and softened by C. S., 3467. In 1919, by C. S., 3470, it was declared that the statutory interpretation of contributory negligence, as applied to "a common carrier by railroad" should also apply to logging roads and tramroads.

In the case at bar the jury has found that the plaintiff was guilty of contributory negligence. Such finding bars recovery unless the plaintiff at the time of his injury, was engaged in a railroad operation as understood and defined by the court. The trial judge so held as a matter of law. There is no contradiction in the evidence, and hence the correctness of the ruling is determinative of the controversy.

The uncontradicted evidence discloses that the defendant at one time had been engaged in a manufacturing project, and as an incident thereto, operated a log road upon tracks extending some twenty miles into the woods, and further, that all of said tracks had been torn up and removed, all locomotives removed, and on the date of the injury the defendant was in the act of dismantling and tearing down the lumbering plant and machinery for the purpose of transporting the same to another point. The plaintiff was operating a motor car upon a spur track on the mill yard, ostensibly hauling the dismantled material to the main line of the Coast Line Railroad for transportation.

It appears from the charge that the spur tracks upon which the motor car was operated, were owned by the defendant. It is not deemed to be particularly important or material whether the plaintiff was operating a locomotive or a motor engine, or the size of the rail, or length of the spur tracks in the mill yard. The avowed purpose of the law, as expressed in statute and decision, was to protect employees engaged in railroad operations, or in such work, service, or employment reasonably incidental to a railroad operation. This thought prevailed in the decisions construing the applicability of the fellow-servant doctrine. For instance, in *Nicholson v. R. R.,* 138 N. C., 516, 51 S. E., 40, discussing the fellow-servant statute, the Court said: "But the act applies only to employees of a railroad operating, not that such employees must be operating the trains, but they must be employees, in some department of its work, of a railroad which is being operated. Such business is a distinct, well known business, with many risks peculiar to itself, and all the employees in such business, whether running trains, building or repairing bridges, laying tracks, working in the shops, or doing any other work in the service of an operating railroad, are classified and exempted from the rule which requires employees to assume the risk of all injuries which may be caused by the negligence of a fellow-servant. It is not necessary to show that the plaintiff was injured by a fellow-servant while operating a train, but he must show that he was injured while performing a service necessary to or connected with the use and operation of the road. . . . Here the railroad was being constructed, not operated. . . . It does not matter that elsewhere the same employer was operating a railroad. It was not doing so at this point. Here it was not a railroad at all. It was constructing, building, what later would become

a part of an operating railroad." See, also, *O'Neal v. R. R.,* 152 N. C., 404, 67 S. E., 1022; *Bailey v. Meadows Company,* 152 N. C., 603, 68 S. E., 11; *Twiddy v. Lumber Co.,* 154 N. C., 237, 70 S. E., 282. Moreover, in *Williams v. Mfg. Co.,* 175 N. C., 226, 95 S. E., 366, this Court said: "Both railways and logging roads are railroads, *i. e.,* roads whose operations are conducted by the use of the rails, and come within the general term 'railroad.'" See, also, *Stewart v. Lumber Co.,* 193 N. C., 138, 136 S. E., 385; *Lilley v. Cooperage Co.,* 194 N. C., 250, 139 S. E., 369.

The determining inquiry is whether the dismantling of a mill and its machinery and hauling the same by motor bus on spur tracks in the mill yard to the point of shipment, is a railroad operation or a logging road operation. It has been definitely decided in this State that the construction of a railroad is not a railroad operation, and hence by logical analogy it would seem manifest that the destruction or dismantling of a railroad and lumber plant would not constitute a railroad operation. Spur tracks, maintained in a mill yard for shipping, loading and unloading material, are essentially plant facilities and not railroad. Thus, it would not ordinarily be assumed that a cotton mill operating spur tracks in the mill yard, for loading and unloading purposes, was engaged in railroad operations.

Therefore, the Court is of the opinion that the ruling of the trial judge upon the fourth issue must be held for error.

Reversed.