R. C. G. LOVE et al. v. JASPER MILLER et al.

*Contract— Warranty— Waiver.*

1. M. contracted to sell and deliver to L. a quantity of cotton in bales, "to be of the average grade of middling" or above—none to grade below "low middling :" *Held*, that this constituted a warranty by the vendor that the cotton should be *in fact* of that quality, and not that it should be so according to any particular method of inspection.

2. The fact that the vendee had an opportunity to inspect the cotton, and did inspect some of it at the time it was delivered, did not, under the circumstances, and in view of the peculiar character of the article, amount to a waiver of the warranty.

This was a CIVIL ACTION, tried before *Clark, J.*, at Spring Term, 1889, of GASTON Superior Court, and was brought to recover damages of the defendants for an alleged breach of contract in the sale of 100 bales of cotton to plaintiffs.

The plaintiff, R. C. G. Love swore that his firm, doing business in Gastonia, N. C., had contracted to supply certain cotton mills with cotton; that the firm ordered 100 bales of cotton from the defendants, to be of the average grade of "middling" or above, and no part of the same to grade below "low middling and nice, good stains or tinges, and not more than one bale in four or five as low as that," to be delivered at Gastonia at 11½ cents per pound, instructing defendants at the same time to select fifty of the best bales and retain it until further orders, and to ship the other fifty at once to Gastonia; that soon thereafter defendants gave notice of the shipment of the fifty bales to Gastonia, whereupon plaintiffs ordered thirty-five of the selected fifty bales to be shipped directly to Carpenter Bros , at Maiden, in Lincoln County; that as soon as the fifty bales reached Gastonia, he discovered that it was a very inferior lot of cotton, and wrote to defendants complaining of it, and requesting them

not to ship them any more until the matter could be adjusted; and further, asking one of the defendants to come to Gastonia and inspect the cotton with him and see if they could not adjust their differences; that plaintiffs had paid for the eighty-five bales at the contract price as soon as notified of its shipment; that soon thereafter Jasper Miller, one of the defendants, came to Gastonia, and upon inspection of the cotton, so far as the same could be done by drawing samples from the bales, took back five of them, and paid the plaintiffs for them, and also paid for some shortage in weight, assuring witness that the remaining fifty bales, thirty-five of which had been shipped to Carpenter Bros., were so far above the grade contracted for that they would bring the whole lot up to it, and that plaintiffs were induced by this assurance to accept the remaining forty-five bales; and it was upon condition that the remaining fifty were to be as represented that the forty-five were accepted; that soon thereafter, Carpenter Bros. returned to plaintiff nineteen of the bales shipped them, on the ground that the cotton was so inferior that they could not work it in their mill; that plaintiffs then sold and delivered fourteen bales of the cotton to George Phifer, and the remainder, except two bales, to Wilson & Rankin; that the cotton sold to Phifer was so inferior witness was compelled to settle with him at $7\frac{1}{2}$c per pound, and that he was also compelled to make large concessions to Wilson & Rankin.

Plaintiffs then offered other witnesses—cotton-mill owners and superintendents—who swore that the cotton was below any grade they knew anything about; that some of it could not be worked at all, while that which could be used could only be so used when mixed with other and better grades, and that a sample of the cotton drawn from the bale in the usual way was not a fair specimen of the inside of the bale, and that its true character could only be discovered by opening the bale.

The defendant Jasper Miller swore that, when he went to Gastonia to settle the matter in dispute about the first shipment, the taking back of the five bales by him and the payment therefor to plaintiffs, and the payment for the shortage in weight, was a complete settlement of all matters of difference with regard to said fifty bales, and that he did not promise that the fifty bales yet to be delivered should be so far above the contract grade that it would bring the whole lot up to the contract grade; that plaintiffs never saw the cotton itself, nor any samples thereof, until it was delivered. He then offered a book kept by him, showing the grade, date of purchase, and from whom purchased, etc., of every bale of cotton bought by his firm, and swore that the cotton delivered to plaintiffs sampled up to the contract.

The defendants offered other witnesses, who supported Jasper Miller in his testimony as to the quality of the cotton sold.

It was also in evidence that it was the custom in the cotton trade that, where a bale was sold upon inspection of the outsides, or by sample, and it turned out to be "plated," the seller should make good the difference in value.

Defendants asked the Court to charge—

"1. That, as a general rule, no warranty of the quality of a chattel is implied from the mere fact of sale. The rule in this State is *caveat emptor*, by which is meant that, when the buyer has required no warranty, he takes the risk of quality upon himself."

This instruction was refused, and his Honor charged instead, "that, if a person agrees to purchase articles to be delivered by a certain time, and which are promised to be of a certain good quality, and, after payment for the same, and after it is too late to return them without prejudice to himself, he finds out they are of inferior quality, he may sustain an action to recover damages on account of the inferior quality of the articles, although he has taken and used

them. And further, where a vendor represents an article as possessing a value which, upon proof, it does not possess, he is liable as on a warranty, expressed or implied, although he may not have known such information to be false, if such representation was intended not as a mere expression of opinion, but the positive assertion of a fact, upon which the purchaser acts. And this is a question for the jury."

" 2. That, so far as an ascertained specific chattel already existing. and which the buyer has inspected, is concerned, the rule *caveat emptor* admits of no exception by implied warranty of quality."

" 3. That, where goods are in *esse*, and may be inspected by the buyer, and there is no fraud on the part of the seller, the maxim *caveat emptor* applies, even though the defect which exists in them is latent and not discernible on examination—at least, where the seller is neither the grower nor the manufacturer. If, therefore, the jury believe that the plaintiffs inspected the fifty bales of cotton constituting the first shipment, and after such inspection and examination accepted the same, he cannot in this action recover of the defendants damages because of any unknown or latent defects which may have been afterwards discovered in said cotton, but which at the time were not known by the seller and not discovered by the buyer. That, without a warranty by the seller, or fraud on his part, the buyer must stand to all losses arising from latent defects, and a contrary rule is nowhere laid down."

His Honor said that, " if the jury believed the agreement of the plaintiffs was to take the lot for better or for worse, then instruction two would be true; but if it was a conditional acceptance, and the condition was not complied with by defendants, it would not be true." As to three, his Honor refused to charge this, but charged instead that " when cotton is baled, and the defects not discernible from the outside, the seller would still be liable for latent defects, notwith-

standing an examination by the buyer, unless the contract was that the buyer was to take the cotton for better or for worse."

" 4. That in the sale of chattels by description, it is a condition precedent to the seller's right of action that the thing which he offers to deliver, or has delivered, should answer the description. In applying this rule to the sale of cotton by a particular description under the ' American Standard Classification,' by which it is admitted that the contract in question is to be governed, it is only necessary that the goods, by sample, be up to the terms of the contract. The seller is not in such case responsible for latent defects in respect to which the rule *caveat emptor* applies."

This his Honor refused, stating that the bargain in this case was to have cotton of a certain grade, and not merely samples.

From the refusal of his Honor to charge as requested, and from the charge as given, the defendants excepted.

There was a verdict and judgment thereon for the plaintiffs. Appeal by defendants.

*Messrs. G. F. Bason* and *C W. Tillett,* for the plaintiffs.
*Mr. R. W. Sandifer,* for the defendant.

SHEPHERD, J. This appeal presents for our consideration the following questions :

1. Was there a warranty as to the quality of the cotton?

The defendants contracted to sell and deliver to the plaintiffs' order one hundred bales of cotton " to be of the average grade of middling and nice, good stains or tinges, and not more than one bale in four to be as low as that."

That this is a warranty is well settled by the case of *Lewis* v. *Rountree,* 78 N. C., 323, in which the following language of MILLER, J., in *Jones* v. *Just,* L. R. 3 Q. B., 197, was approved. " In general, on the sale of goods by a particular description,

whether the vendee is able to inspect them or not, it is an
implied term of the contract that they shall reasonably answer
such description, and if they do not it is unnecessary to put any
other question to the jury." "It is not meant," says the
Court, "that words of description are always a warranty.
But the cases in which that is held have something special
to take them out of the rule and to show that in those cases
it was not so intended." There are no such exceptional cir-
cumstances in this case, and we have no hesitation in declar-
ing that there was a warranty that the cotton should be of
the quality described by the terms of sale.

2. Did the warranty extend to latent defects, or was it only
to the effect that the cotton was to be of a certain grade by
the usual mode of inspection?

In *Lewis* v. *Rountree, supra,* the contract was for the sale of
"strained rosin," and the purchaser was permitted to make
his selection of 517 barrels out of a lot containing more than
two thousand. He had implements with which to cut in
and inspect the barrels, and he did inspect and select about
twenty samples. After sale and shipment it was found, upon
inspection in New York, that the lot did not correspond with
the samples and that all of it was not *strained* rosin. The
Court said the fact "that plaintiffs had an opportunity to
inspect the rosin before or when it was delivered, and did in
fact select the particular barrels out of a large number, *did not
amount to a waiver* of the warranty that it should be of the
specific description. This is reasonable. It is almost impos-
sible, or at least very difficult, to tell from any inspection of a
barrel of rosin, short of breaking it up into fragments,
whether it contains dross—that is chips, dust, &c.—or not.
And to break it up makes it unfit for transportation and
unmarketable." These remarks are applicable to the exam-
ination of cotton when baled, and this view is sustained by
the testimony of the witness Phifer, who said " that a sam-
ple of the cotton drawn from the bale in the usual way was

not a fair specimen of the inside of the bale, and that its true character could only be discovered by opening the bale."

Our case is even stronger than the one we have cited, as here the plaintiff had no opportunity to inspect the cotton until after the delivery. The warranty was not that the cotton should be of good middling grade according to any particular method of inspection, but that it was *in fact* to be of that quality. The principles declared in Rountree's case are fully sustained by a recent decision of the Supreme Court of Georgia in *Miller et al* v. *Moore et al.*, Vol. 10, No. 12 S. E. Rep. The action was for a breach of warranty in the sale of several car-loads of corn. BLECKLY, C. J., says: " The descriptive words by which the sale was made were 'No. 2 white mixed corn, bulk.' These words comprehend quality as well as variety, and import a warranty on the part of the seller as to both. Corbin's note 24 to Benj. Sales, 844; *Gould* v. *Stein* (Mass.), 22 N. E. Rep., 47; *Whitaker* v. *McCormick*, 6 Mo. App., 114; *Woolcott* v. *Mount*, 36 N. J. Law, 496; *Bridge* v. *Wayne*, 1 Starkie, 504. Nor will inspection by the buyer before acceptance deprive him of the protection of the warranty as to latent defects."

3. The remaining question as to the waiver of the breach of warranty by not offering to return the cotton, is also settled by the case first mentioned.

We are unable upon a perusal of the record to find any error.

Affirmed.