CLYDE R. POTTER v. THE NATIONAL SUPPLY COMPANY.

(Filed 2 March, 1949.)

**1. Trial §§ 22a, 28—**

Upon defendant's motion to nonsuit and prayer for a directed verdict, the evidence tending to support plaintiff's claim will be taken as true and all conflict resolved in plaintiff's favor.

**2. Sales § 14—**

An express warranty is any affirmation or promise by the seller which has the natural tendency to induce the buyer to purchase the goods and upon which the buyer relies in making the purchase.

**3. Sales § 17—Evidence that manufacturer sold marine engine to plaintiff rather than to shipbuilder who installed it, held sufficient.**

Evidence in this case disclosing that defendant manufacturer's sales agent contacted plaintiff buyer directly in negotiations for the sale of a marine engine, that a few days thereafter the manufacturer made an offer in writing to sell plaintiff an engine of certain specifications to be installed in a specified hull which plaintiff was contemplating purchasing from a shipbuilder, and that the shipbuilder thereafter gave the order for the engine at the gross purchase price less commission accompanied by letter stating that plaintiff had decided to purchase for cash and not on a deferred payment basis, together with other evidence, *is held* sufficient in plaintiff's action for breach of warranty to overrule defendant manufacturer's motion to nonsuit on the ground that the evidence showed that the contract of sale was made with the shipbuilder and not with plaintiff.

1—230

**4. Sales § 14—Evidence that seller expressly warranted engine would turn specified propeller 600 r.p.m. held sufficient for jury.**

Evidence that defendant manufacturer's sales agent contacted plaintiff directly in negotiating for the sale of a marine engine for a particular hull plaintiff was contemplating purchasing, represented that he would guarantee the proposed engine would turn a 50" propeller with a 34" pitch 600 r.p.m., that the manufacturer made a written offer to sell a specified engine which would develop 260 h.p. at 600 r.p.m. for the specified hull, with evidence that the order for the engine for the specified hull was given and that the manufacturer invoiced the engine as one developing "260 b.h.p. at 600 r.p.m.," together with other evidence, *is held* sufficient to be submitted to the jury on the question of the manufacturer's express warranty that the engine would turn a 50 x 34 propeller 600 r.p.m. and that at such speed would develop 260 h.p., notwithstanding conflicting evidence of negotiations at other times for an engine of less power.

**5. Sales § 18—**

A buyer does not waive his right to sue his seller for damages for breach of warranty by mere acceptance and retention of goods not fullfilling the warranty.

**6. Evidence § 39—**

Parol testimony as to conversations or declarations of the parties at or before the execution of a written contract is incompetent to alter, add to, or contradict the writing in an action on the contract between the parties or persons claiming under them.

**7. Same—Contract between purchaser and shipbuilder held not to preclude parol evidence of different specifications for engine sold directly by manufacturer to plaintiff.**

The evidence tended to show that plaintiff entered into a contract with a shipbuilder for a boat equipped with an engine of certain specifications, but that plaintiff negotiated directly with the manufacturer for the engine and entered into a contract with the manufacturer for an engine of different specifications. *Held:* The manufacturer was not a party to the contract betweeen plaintiff and the shipbuilder, and therefore the parol evidence rule does not preclude plaintiff from introducing evidence of verbal negotiations with the manufacturer for an engine of greater power. Further, the contract between plaintiff and the manufacturer for the engine became effective subsequent to the effective date of plaintiff's contract with the shipbuilder although the negotiations with the manufacturer antedated such contract.

APPEAL by defendant from *Morris, J.,* and a jury, at the December Term, 1948, of BEAUFORT.

Briefly stated, the complaint declared that plaintiff, a fisherman of Belhaven, North Carolina, bought a Diesel engine from defendant, a corporation engaged in manufacturing engines at Springfield, Ohio, through the Barbour Boat Works, a shipbuilding firm at New Bern, North Carolina, for installation in the plaintiff's fishing trawler then in

process of completion by the Barbour Boat Works; that as part of the transaction defendant warranted to plaintiff that the engine when installed in the trawler would turn a "50 x 34 propeller" 600 revolutions per minute and at such speed develop 260 horsepower; that the warranty was breached in specified particulars; and that the breach proximately resulted in substantial damage to plaintiff. The answer contained a categorical denial of the material allegations of the complaint. The plaintiff presented testimony tending to establish the matters set out in the six next succeeding paragraphs.

Before the events recited below, Barbour Boat Works contracted to construct a fishing trawler for the Hatteras Development Company in accordance with written plans and specifications prepared for the latter by Weaver Associates Corporation bearing date 8 January, 1945. These plans and specifications provided, among other things, that Barbour Boat Works should furnish "all labor and material" and deliver the complete vessel afloat at its plant to the Hatteras Development Company; that the engine horsepower should be "200 H. P. at 450 R.P.M."; that the propulsion engine should be "a Superior Marine Diesel Engine Standard Model, 6 cylinder, 9 inch bore, 12 inch stroke, rated 200 H.P. at 450 R.P.M."; and that the propeller should be "3-bladed bronze, of about 50 inches diameter and a pitch of about 34 inches." After the Barbour Boat Works had constructed the frame or body of the proposed trawler and designated it as "Hull No. 15," it discovered that Hatteras Development Company had become unable to carry out the remainder of the contract on its part. Thereupon Barbour Boat Works and Hatteras Development Company entered into an agreement in writing in which Barbour Boat Works released Hatteras Development Company from any further liability in the premises and in which Hatteras Development Company surrendered all rights in the incomplete vessel to Barbour Boat Works.

Plaintiff owned several trawlers which he used in fishing in the ocean along the Atlantic Coast. His operations frequently extended to the Newfoundland banks, some 800 miles from Belhaven. Barbour Boat Works was anxious to complete "Hull No. 15," and defendant was desirous of furnishing an engine for it. Plaintiff saw the incomplete trawler at the shipyards in New Bern. A few days later, to wit, about 20 January, 1946, R. E. Hoffman, sales agent of defendant, and R. R. Rivenbark, a representative of Barbour Boat Works, visited plaintiff at his home in Belhaven, where the three men engaged in conversation concerning the incomplete vessel and a Diesel engine to propel it. They had before them the plans and specifications of Weaver Associates Corporation relating to "Hull No. 15."

Plaintiff advised Hoffman and Rivenbark that he would buy the "boat" for use in his fishing business if he could obtain an engine for it which "would do his work"; that he did not "know too much about Diesel engines"; and that the only way he could figure what power he needed was "the amount of revolutions" of the propeller an engine would turn. Plaintiff and Hoffman then discussed the engine described in the plans and specifications, "going into details of the engine" and the "amount of revolutions it would turn." The plaintiff asked Hoffman if such engine would turn a propeller of the diameter of 50 inches and of a pitch of 34 inches 600 revolutions per minute and declared that he would buy "that engine . . . if it would do that." Hoffman replied that he "would guarantee it to turn 600 because he had a tug in Jacksonville with the same engine that would do the same thing, 34 propeller, 50 inch diameter." Relying on "the guaranty," plaintiff agreed to "buy the engine and take the boat also . . . . The engine was to cost $12,000." A few days thereafter, namely, on 28 January, 1946, defendant, "The National Supply Company (Seller)," offered in writing to sell to plaintiff, "Clyde R. Potter (Buyer) . . . f.o.b. its plant Springfield, Ohio . . . one Superior Diesel Marine Engine Type 50 M 6 - 9 inches x 12 inches, which shall develop 260 brake H.P. at 600 R.P.M. . . . for use in the vessel . . . being built as Hull No. 15 by Barbour Boat Works, New Bern, N. C." for the price of $12,316.72 to be paid partly in cash and partly in specified future monthly installments.

On 2 February, 1946, Barbour Boat Works and plaintiff entered into a contract in writing whereby Barbour Boat Works sold and conveyed to plaintiff "the trawler designated as Hull No. 15" and agreed "to build and complete said vessel, equipping her in accordance with the plans and specifications designed for the Hatteras Development Company by Weaver Associates Corporation January 8th, 1945, as said specifications have this day been modified in writing and agreed to by the parties." There was no modification of the description of the engine which was to propel the trawler. The contract expressly stipulated, among other things, that the price of "said completed and equipped vessel" should be $55,000.00 payable in particularized installments of varying amounts at specified times; that $12,000.00 of the price was to be paid "upon arrival of the engine at New Bern, N. C., for delivery and installation in the boat"; that the Barbour Boat Works should make good at its own expense all defects due to faulty materials or workmanship that developed within a period of ninety days after the acceptance by plaintiff, except as to defects in workmanship or materials in engine or equipment purchased by the Barbour Boat Works for installation and as to such parts the guarantee of the furnisher should be applicable; and that modifications or changes could be made in the plans and specifications subsequent to

the execution of the contract by mutual consent of the parties. On the same day, Barbour Boat Works issued a purchase order to defendant, requesting it to ship "one 6-cyl. 9 x 12 Direct Rev. Marine Diesel Engine" for "Hull 15" for $10,301.00, which represented the gross purchase price of $12,051.00 "less commis." of $1,750.00. This order was accompanied by the check of Barbour Boat Works for $1,650.00 "as deposit with order," and was mailed to defendant in a letter in which Barbour Boat Works advised defendant that the plaintiff had "decided that he would not purchase this unit on a deferred payment basis," and requested the defendant to deduct its "discount" from the sale price in making the "shipment and billing" and to ship the engine immediately to "New Bern, sight draft, First Citizens Bank and Trust Company, of New Bern, for the balance of the sale price."

On 6 February, 1946, defendant shipped the engine by rail to its own order at New Bern with direction to the carrier to notify Barbour Boat Works of the arrival of the shipment at destination. It forwarded the "order notify" bill of lading with a sight draft for $10,301.00 attached to a bank at New Bern. When it delivered the shipment to the carrier, the defendant prepared and forwarded to Barbour Boat Works an invoice in which it described the engine as a "6 cylinder, 9 inch base x 12 inch stroke, direct reversible manual reversing Starboard Marine Superior Diesel engine, developing 260 B H P at 600 RPM." Upon the arrival of the consignment at New Bern, plaintiff paid $12,000.00 to Barbour Boat Works, and the latter took up the draft and installed the engine in "Hull No. 15." The defendant issued an instruction book with the engine stating, in substance, that the engine had a speed of "600 R.P.M." and would produce "260 H.P." when operated at such speed.

When the trawler was completed, it was ascertained that the engine would not turn the propeller 600 revolutions per minute or generate 260 horsepower. Efforts to produce such results raised the temperature of the engine to heights which threatened the destruction of the engine itself. Nevertheless, the plaintiff paid Barbour Boat Works the remainder of the price specified in their contract and used the trawler in his business. But he advised both the defendant and Barbour Boat Works of the unsatisfactory operation of the engine and threatened to sue them unless satisfying results were obtained. Letters passed between the managing officers of the defendant and Barbour Boat Works conceding that "this engine was sold to develop 260 brake horse power at 600 revolutions per minute" and discussing possible remedial action to effect this result. On several occasions, defendant sent its engineers and service men to Belhaven to inspect the engine and determine what could be done to enable the engine to "develop its rated speed and horse power." Although the pitch and size of the propeller were reduced on their advice, no substantial improvement

in the operation of the engine was achieved. It was impossible to turn the propeller more than 440 revolutions per minute without elevating the temperature of the engine to dangerous levels. In consequence, the trawler's speed was limited to seven and a half or eight miles an hour, whereas it would have traveled ten and a half miles in such period if the engine had been capable of revolving·the propeller in its original state 600 times a minute. This seriously impaired both the utility and the market value of the vessel. Moreover, the plaintiff expended substantial sums in altering the propeller under the direction of the defendant's engineers and in replacing parts damaged by the undue heat of the engine.

The defendant presented testimony tending to show that all of its transactions in respect to the engine were with Barbour Boat Works and not with the plaintiff; that it did not make any promise or representation of any character concerning the engine to plaintiff; that the engine was capable of developing "260 B.H.P. at 600 R.P.M." when employed with some propellers, but would not turn a propeller of the diameter of 50 inches and of the pitch of 34 inches 600 revolutions per minute or generate 260 horsepower when attached to such a propeller; and that, consequently, the defendant did not make any promise or representation to the plaintiff, or the Barbour Boat Works, or any other person at any time that the engine could produce 600 revolutions a minute or develop 260 horsepower in conjunction with a "50 x 34 propeller."

The court submitted to the jury the four issues arising on the pleadings. These issues and the answers of the jury thereto were as follows:

1. Did plaintiff order from defendant through Barbour Boat Works and did defendant deliver to plaintiff through Barbour Boat Works a six-cylinder type VD MB Diesel engine for installation in plaintiff's vessel, as alleged in the complaint? Answer: Yes.

2. If so, did defendant warrant and guarantee to plaintiff that said engine when properly installed in plaintiff's vessel would turn a 50 x 34 propeller 600 R.P.M., and at such speed would develop 260 H.P., as alleged in the complaint? Answer: Yes.

3. If so, was there a breach of such warranty, as alleged in the complaint? Answer: Yes.

4. What damages is plaintiff entitled to recover? Answer: $3,000.00 and interest.

Judgment was entered on the verdict, and the defendant appealed, assigning as errors the denial of its motion for a compulsory nonsuit, the refusal to give its prayers for a directed verdict on the first and second issues, the admission of testimony offered by plaintiff, and certain excerpts from the charge.

*Rodman & Rodman for plaintiff, appellee.*
*Carter & Carter for defendant, appellant.*

ERVIN, J.  It is axiomatic that a plaintiff in a civil action must both allege and prove every material fact essential to the establishment of a cause of action in his favor against the defendant in order to obtain the judgment which he seeks.  In the case at bar, the defendant concedes that the plaintiff has stated enough facts in his complaint to constitute a good cause of action against it for damages for breach of an express warranty made by it to plaintiff.  By its motion for a compulsory nonsuit under G.S. 1-183 and its prayers for a directed verdict on the first and second issues, however, the defendant challenges the sufficiency of the evidence to support the cause of action alleged.  In determining whether or not the trial court erred in denying the defendant's motion for an involuntary nonsuit or in refusing to direct a verdict for the defendant upon the first and second issues in conformity to its requests for instructions, we must take it for granted that the evidence tending to support the plaintiff's claim is true and must resolve all conflicts of testimony in his favor. *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307.

The Uniform Sales Act provides that "any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon."  Williston on Sales (Revised Edition), section 194.  Our Legislature has not incorporated the Uniform Sales Act in our statutory law, but the accuracy of the lucid and succinct definition of an express warranty embodied in the Act is fully supported by repeated decisions of this Court.  *Walston v. Whitley & Co.,* 226 N.C. 537, 39 S.E. 2d 375; *Simpson v. Oil Co.,* 217 N.C. 542, 8 S.E. 2d 813; *Dallas v. Wagner,* 204 N.C. 517, 168 S.E. 833; *Swift v. Meekins,* 179 N.C. 173, 102 S.E. 138; *Tomlinson v. Morgan,* 166 N.C. 557, 82 S.E. 953; *Hodges v. Smith,* 159 N.C. 525; 75 S.E. 726; *Wrenn v. Morgan,* 148 N.C. 101, 61 S.E. 641; *Reiger v. Worth,* 130 N.C. 268, 41 S.E. 377, 89 Am. S.R. 865; *Foggart v. Blackweller,* 26 N.C. 238; *Thompson v. Tate,* 5 N.C. 97, 3 Am. D. 678.

The defendant bases its claim to a compulsory nonsuit or directed verdict initially upon the theory that the evidence compels the single deduction that its contract of sale was with Barbour Boat Works and not with the plaintiff.  This position is unsupportable.  It ignores the testimony relating to the conversation between plaintiff and the defendant's sales agent, Hoffman.  It likewise refuses to take notice of the offer of the defendant to sell the engine to "Clyde R. Potter (Buyer)" for a price to be paid partly in cash and partly in future installments, and the statements in the letter and purchase order sent to defendant by Barbour Boat

Works that the purchase was to be for cash because "Mr. Potter (had) decided that he would not purchase this unit on a deferred payment basis." Moreover, it leaves out of consideration the purchase order of 2 February, 1946, and the invoice of 6 February, 1946, which justify the inference that the Barbour Boat Works, in effect, received a commission of $1,750.00 for aiding defendant to consummate the sale of the engine to plaintiff. The defendant asserts secondarily that the trial court erred in refusing to nonsuit the action or to direct a verdict for it therein upon the ground that there is no evidence in the record to sustain the proposition that the defendant ever affirmed or promised that the engine would have a speed of 600 revolutions per minute or would develop 260 horsepower when used in conjunction with a propeller of a diameter of 50 inches and a pitch of 34 inches. This position is untenable. It conflicts directly with the evidence of the conversation between plaintiff and Hoffman. Furthermore, it runs counter to the fact that all transactions looked to the installation of an engine in "Hull No. 15," whose plans and specifications called for a 3-bladed bronze propeller "of about 50 inch diameter and a pitch of about 34 inches."

When the evidence tending to support the plaintiff's claim is accepted as true and the conflicts of testimony are resolved in his favor, it becomes manifest that the trial court properly refused to nonsuit the action or to direct a verdict for defendant therein. This is true because the testimony adduced at the trial was sufficient to justify the inferences that defendant sold the engine to plaintiff and that as a part of the sale the defendant expressly warranted that the engine "would turn a 50 x 34 propeller 600 r.p.m. and at such speed would develop 260 h. p." when installed in the trawler designated as "Hull No. 15."

While the question is not mooted on the appeal, it is not altogether amiss to note, in passing, that a buyer does not waive his right to sue his seller for damages for a breach of warranty by the mere acceptance and retention of goods not fulfilling the warranty. *Manufacturing Co. v. Gray,* 124 N.C. 322, 32 S.E. 718; *Alpha Mills v. Engine Co.,* 116 N.C. 797, 21 S.E. 917; *Love v. Miller,* 104 N.C. 582, 10 S.E. 685; *Lewis v. Rountree,* 78 N.C. 323.

The defendant reserved exceptions to the admission of certain testimony offered by plaintiff on the theory that its reception contravened the parol evidence rule. In this connection, the defendant asserts that the conversation between plaintiff and the defendant's sales agent, Hoffman, antedated the written contract of 2 February, 1946, between plaintiff and Barbour Boat Works; that such written contract specified that the trawler to be completed thereunder was to be driven by a "Superior Marine Diesel Engine, Standard Model, 6 cylinder, nine inch base x 12 inch stroke, rated 200 H. P. at 450 R.P.M."; that such written provision was controlling

as to the character of the engine to be installed in the trawler; that the alleged prior oral agreement between plaintiff and Hoffman, and the other testimony concerning an engine which "would turn a 50 x 34 propeller 600 R.P.M. and at such speed . . . develop 260 H. P." was at variance with the written contract between plaintiff and Barbour Boat Works; and that by reason thereof the testimony in question was inadmissible under the parol evidence rule.

It is a well established principle, which is known as the parol evidence rule, that when any contract has been reduced to writing, and is evidenced by a document or series of documents, parol evidence cannot be admitted to alter, add to, or contradict the writing in actions between parties to the contract or persons claiming under them where claims or rights created by the contract are the subject matter of the litigation. *Jones v. Chevrolet Co.,* 217 N.C. 693, 9 S.E. 2d 395; *Holloman v. R. R.,* 172 N.C. 372, 90 S.E. 292, L.R.A. 1917C 416, Ann. Cas. 1917E 1069; *King v. McRackan,* 168 N.C. 621, 84 S.E. 1027; *Ledford v. Emerson,* 138 N.C. 502, 51 S.E. 42; *Carden v. McConnell,* 116 N. C. 875, 21 S.E. 923; *Reynolds v. Magness,* 24 N. C. 26. Under this rule, parol testimony as to conversations or declarations of the parties at or before the execution of a written contract will not be received for the purpose of substituting a different agreement for the one expressed in the writing. *Whitehurst v. FCX Fruit and Vegetable Service,* 224 N.C. 628, 32 S.E. 2d 34; *Insurance Co. v. Morehead,* 209 N.C. 174, 183 S.E. 606; *Bank v. Sternberger,* 207 N.C. 811, 178 S.E. 595, 97 A.L.R. 720; *Oliver v. Hecht,* 207 N.C. 481, 177 S.E. 399; *Winstead v. Manufacturing Co.,* 207 N.C. 110, 176 S.E. 304.

The record on this appeal makes it plain, however, that the trial court did not err in admitting the testimony now under consideration. The defendant is precluded from invoking the parol evidence rule on the basis of the contract of 2 February, 1946, between plaintiff and the Barbour Boat Works. It is not a party to that contract, and that contract does not undertake to govern any contractual relations between it and the plaintiff. Besides, the plaintiff does not seek to enforce against the defendant any claim or right created by his contract of 2 February, 1946, with Barbour Boat Works. Indeed, he bases his cause of action upon a different contract made between him and the defendant and resting partly in parol and partly in writing. Furthermore, it might well be noted that the agreement between plaintiff and defendant covering an engine "to develop 260 H. P. at 600 R.P.M." became legally effective subsequent to the contract of 2 February, 1946.

We have given painstaking study to the remaining exceptions addressed to the admission of testimony and to the assignments of error based on excerpts from the charge and have found no error prejudicial to any substantial right of the defendant.

For the reasons.given, the trial and judgment in the Superior Court will be upheld.

No error.